**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABEER TUTANJI, | Civil Action No.: 12-887 (JLL) |
| Plaintiff, | |
| v. | OPINION |
| BANK OF AMERICA, | |
| Defendant. | |

This matter comes before the Court by way of Defendant Bank of America ("Defendant")'s unopposed motion to dismiss Plaintiff Abeer Tutanji ("Plaintiff")'s civil complaint ("Complaint") for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Entry No. 10]. The Court has considered Defendant's submissions in support of the instant motion, and decides the motion on the papers pursuant to Fed. R. Civ. P. 78. For the reasons stated herein, Defendant's Motion to Dismiss Plaintiff's Complaint is granted.

**I. BACKGROUND**

Plaintiff is a resident of Woodside Park, New Jersey, and maintains a mortgage on her home. (Compl., ¶¶ 4, 7). Plaintiff makes a series of allegations against Defendant regarding its purported debt collection practices despite, on her account, being at no point late or otherwise delinquent on her mortgage with Defendant. (Id. ¶ 22). Plaintiff first claims that Defendant "telephoned [her] during all hours of the day and night," "communicated with [her] husband regarding the debt, without authorization or permission to do so," and "failed to inform [her] that

the calls were from a debt collector, and that any information shared would be used for that purpose." (Id. ¶¶ 11-13). In addition to the calls, Plaintiff alleges that "numerous threatening letters" were sent "in an attempt to collect the debt," and that the "letters failed to inform [her] that the communications were from a debt collector," or "that any information shared would be used for that purpose." (Id. ¶¶ 14-15). Plaintiff also claims that Defendant did not send her a validation notice as required by the Fair Debt Collection Practices Act ("FDCPA"). (Id. ¶ 15).

Plaintiff additionally asserts claims relating to her representation by counsel and Defendant's false reporting. First, Plaintiff alleges that Defendant knew she was represented by counsel in connection with "the relevant debt," and despite this knowledge, "blatantly continued to contact and harass" her. (Id. ¶¶ 17-18). Even after Plaintiff's attorney contacted Defendant and informed Defendant that Plaintiff was represented by counsel, Plaintiff contends, "Defendant continued to contact and harass Plaintiff about the debt." (Id. ¶ 19). Second, Plaintiff states that Defendant told her that she owed debt for escrow payments, which was a false representation since Plaintiff owed no debts pursuant to any agreement or operation of law. (Id. ¶¶ 20-21). Defendant further purportedly falsely reported to the Credit Reporting Bureaus that Plaintiff was delinquent in her payments, causing Plaintiff to be denied credit and to suffer actual damages, consternation, anxiety and distress. (Id. ¶¶ 24-26).

Plaintiff filed her four-count Complaint against Defendant on February 10, 2012. [Docket Entry No. 1]. Plaintiff's first Count alleges violations of the FDCPA pursuant but not limited to the following provisions: 15 U.S.C. § 1692c(a)(1) (calling at unreasonable times in an effort to harass Plaintiff); 15 U.S.C. § 1692c(a)(2) (contacting Plaintiff despite knowing her to be represented by counsel); 15 U.S.C. § 1692c(b) (communicating with Plaintiff's husband

the calls were from a debt collector, and that any information shared would be used for that purpose." (Id. ¶¶ 11-13). In addition to the calls, Plaintiff alleges that "numerous threatening letters" were sent "in an attempt to collect the debt," and that the "letters failed to inform [her] that the communications were from a debt collector," or "that any information shared would be used for that purpose." (Id. ¶¶ 14-15). Plaintiff also claims that Defendant did not send her a validation notice as required by the Fair Debt Collection Practices Act ("FDCPA"). (Id. ¶ 15).

Plaintiff additionally asserts claims relating to her representation by counsel and Defendant's false reporting. First, Plaintiff alleges that Defendant knew she was represented by counsel in connection with "the relevant debt," and despite this knowledge, "blatantly continued to contact and harass" her. (Id. ¶¶ 17-18). Even after Plaintiff's attorney contacted Defendant and informed Defendant that Plaintiff was represented by counsel, Plaintiff contends, "Defendant continued to contact and harass Plaintiff about the debt." (Id. ¶ 19). Second, Plaintiff states that Defendant told her that she owed debt for escrow payments, which was a false representation since Plaintiff owed no debts pursuant to any agreement or operation of law. (Id. ¶¶ 20-21). Defendant further purportedly falsely reported to the Credit Reporting Bureaus that Plaintiff was delinquent in her payments, causing Plaintiff to be denied credit and to suffer actual damages, consternation, anxiety and distress. (Id. ¶¶ 24-26).

Plaintiff filed her four-count Complaint against Defendant on February 10, 2012. [Docket Entry No. 1]. Plaintiff's first Count alleges violations of the FDCPA pursuant but not limited to the following provisions: 15 U.S.C. § 1692c(a)(1) (calling at unreasonable times in an effort to harass Plaintiff); 15 U.S.C. § 1692c(a)(2) (contacting Plaintiff despite knowing her to be represented by counsel); 15 U.S.C. § 1692c(b) (communicating with Plaintiff's husband

regarding her debt without Plaintiff's permission or authority); 15 U.S.C. § 1692d(5) (contacting Plaintiff in an effort to harass and abuse her); 15 U.S.C. § 1692d(6) (concealing Defendant's identity when dealing with Plaintiff); 15 U.S.C. § 1692e(10) (misrepresenting that Plaintiff owed a debt she did not owe); 15 U.S.C. § 1692e(15) (failing to provide a validation notice to Plaintiff); and 15 U.S.C. § 1692g (failing to validate the debt within the requisite time period mandated by the statute). (Compl., ¶¶ 28-29). Count Two of Plaintiff's Complaint asserts a Fair Credit Reporting Act ("FCRA") claim for falsely reporting that Plaintiff owed a debt and was delinquent in paying that debt to various credit reporting agencies. (Id. ¶ 32). Count Three asserts that Defendant misrepresented the terms of the loan to her in violation of the New Jersey Consumer Fraud Act ("NJCFA") when Defendant induced Plaintiff to take out the subject mortgage without telling her that an escrow account would be imposed on her. (Id. ¶¶ 39-40). Finally, Count Four alleges that Defendant's conduct constituted negligence and a breach of the duty of good faith in that Defendant owed a duty to Plaintiff to "not unlawfully impose additional terms of the loan upon her and to not unlawfully damage Plaintiff's credit rating," and that "Defendant breached its duty by imposing additional terms and damaging Plaintiff's credit rating." (Id. ¶¶ 43-44). Defendant filed the instant Motion on April 9, 2012. [Docket Entry No. 10]. Plaintiff has filed no opposition to Defendant's Motion.

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The

3

plausibility standard is not akin to a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"; mere consistency with liability is insufficient. Id. In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). During a Court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). In accordance with the adoption of the new Iqbal standard by the Supreme Court, the Third Circuit held that the "no set of facts" standard set forth in Conley v. Gibson, 33 U.S. 41, 45-46 (1957) no longer applied to federal complaints. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). District courts now reviewing complaints for failure to state a claim must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. (citations omitted).

Fraud claims must meet a heightened pleading standard under Fed. R. Civ. P. 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)(citing Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004)). The plaintiff must also allege "who made the purported misrepresentations and what specific misrepresentations and what specific misrepresentations were made." Id. With this framework in mind, the Court turns now to Defendant's motion.

### III. DISCUSSION

A. Plaintiff's FDCPA Claims

Plaintiff asserts a minimum of eight FDCPA violations against Defendant on the basis of telephone calls and written communications made by Defendant relating to her mortgage. (Compl., ¶¶ 28-29). Defendant first argues that the FDCPA does not apply to it since Bank of America is not a "debt collector" under the FDCPA and was not acting as a debt collector with respect to Plaintiff's mortgage. (Def. Br., at 1). Defendant does not deny that it is the servicer of Plaintiff's mortgage, but claims that it is exempt from the FDCPA except under limited circumstances not alleged by Plaintiff. (Id. at 2).

Under the FDCPA, the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). That term does not include: "any person collecting or attempting to collect any debt owed or due

another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person. . . ." 15 U.S.C. § 1692a(6)(F). Therefore, the servicers of residential mortgages have been consistently found by courts not to be "debt collectors" under the FDCPA if the loan in question is not in default when acquired by the servicer. See Stolba v. Wells Fargo & Co., 2011 U.S. Dist. LEXIS 87355, at * 5-6 (D.N.J. Aug. 8, 2011); Siwulec v. Chase Home Fin., LLC, 2010 U.S. Dist. LEXIS 12894, at * 3 (D.N.J. Dec. 7, 2010); Dawson v. Dovenmuehle Mortg., Inc., 2002 U.S. Dist. LEXIS 5688, at * 5 (E.D. Pa. Apr. 3, 2002). The law is thus "well settled . . . that . . . mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." Stolba, 2011 U.S. Dist. LEXIS 872355, at * 6 (quoting Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003)); Knobbe v. Bank of Am., N.A., 2007 U.S. Dist. LEXIS 72298 (D. Neb. Sept. 26, 2007) ("Creditors who collect in their own name are not 'debt collectors.' . . . Bank of America is not a 'debt collector' and thus has no FDCPA liability."); James v. Wells Fargo Bank, NA Corp., 2011 U.S. Dist. LEXIS 53077, at * 3 (D. Utah May 17, 2011). The Complaint alleges that Plaintiff was not in default on her mortgage. (Compl., ¶ 23). Therefore, based on the limited facts alleged in Plaintiff's Complaint, Bank of America is not a "debt collector" under FDCPA and is exempt from liability under the facts stated. Plaintiff's FDCPA claim is accordingly dismissed.

B. Plaintiff's FCRA Claim

Plaintiff claims that Defendant "falsely reported to various credit reporting agencies that Plaintiff owed a debt and was delinquent in paying that debt." (Compl., ¶ 32). Plaintiff further

asserts that she "disputed the debt with Defendant but Defendant failed to remove or investigate the matter." (Id. ¶ 34). Defendant argues that Plaintiff's FCRA claim must fail since she only claims to have disputed the debt with Defendant, and not that she notified any credit reporting agencies about the dispute, thus failing to trigger any duty on the part of Defendant to investigate the accuracy of said reporting of Plaintiff's account information. (Def. Br., at 1-2). Specifically, Defendant asserts that Plaintiff cannot maintain a claim under the statute because: "(1) there is no private right of action for alleged violations of 15 U.S.C. § 1681s-2(a), and (2) Plaintiff has failed to allege facts sufficient to maintain a claim for violation of 15 U.S.C. § 1681s-2(b)." (Id. at 6). Finally, Defendant argues that any state law claims asserted by Plaintiff relating to credit reporting are preempted by the FCRA pursuant to 15 U.S.C. § 1681t(b)(1)(F). (Id. at 7).

The FCRA imposes sanctions on "furnishers of information" if they fail to fulfill the duties set forth under 15 U.S.C. § 1681s-2(a) and (b). Section 1681s-2(a) requires, inter alia, that entities that furnish data to consumer reporting agencies provide accurate information, that they correct and update information, and that they provide notice of a dispute and of any closed or delinquent accounts. Section 1681s-2(a)(1)(A) specifically provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Pursuant to 15 U.S.C. §§ 1681s-2(c) and (d), no private right of action exists to establish civil liability under § 1681s-2(a), including any regulations issued thereunder. Rather, § 1681s-2(a) "shall be enforced exclusively as provided under section 621 [15 U.S.C. § 1681s] by the Federal agencies and officials and the State officials identified in section 621 [15 U.S.C. § 1681s]." See 15 U.S.C. 1681s-2(c)-(d). Therefore, Plaintiff cannot base her FCRA claim on 15

U.S.C. § 1681s-2(a). See <u>Huertas v. Galaxy Asset Mgmt.</u>, 641 F.3d 28, 34 (3d Cir. 2011); <u>Edwards v. Equable Ascent, FNCL, LLC</u>, 2012 U.S. Dist. LEXIS 54112, at * 9 (D.N.J. Apr. 16, 2012).

However, district courts in the Third Circuit have held that plaintiffs have a private right of action and may bring civil actions pursuant to 15 U.S.C. § 1681s-2(b). See <u>Martinez v. Granite State Mgmt. & Res.</u>, 2008 U.S. Dist. LEXIS 94995, at * 5 (D.N.J. Nov. 20, 2008)(citing <u>Krajewski v. American Honda Fin. Corp.</u>, 557 F. Supp. 2d 596, 608 (E.D. Pa. 2008)); <u>Bartley v. LVNV Funding, LLC</u>, 2010 U.S. Dist. LEXIS 64037, at * 9 (D.N.J. June 28, 2010); <u>Henderson v. Equable Ascent Fin., LLC</u>, 2011 U.S. Dist. LEXIS 127662, at * 8 (D.N.J. Nov. 4, 2011). Section 1681s-2(b) establishes the duties of furnishers of information upon their notice of a dispute, and provides that:

> (1) . . . After receiving notice pursuant to section 611(a)(2) [15 U.S.C. § 1678i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>
>> (A) conduct an investigation with respect to the disputed information;
>> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 U.S.C. § 1682i(a)(2)];
>> (C) report the results of the investigation to the consumer reporting agency;
>> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the result of the reinvestigation promptly–
>>
>>> (i) modify that item of information;
>>> (ii) delete that item of information; or
>>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). In order to state a claim against a furnisher of information under this

provision, a plaintiff must plead that she: "(1) sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." Henderson, 2011 U.S. Dist. LEXIS 127662, at * 8 (citing Martinez, 2008 U.S. Dist. LEXIS 94995, at * 6); see also Ruff v. America's Servicing Co., 2008 U.S. Dist. LEXIS 33447, at * 4 (W.D. Pa. Apr. 28, 2008); Schroeder v. Verizon Pa., Inc., 2011 U.S. Dist. LEXIS 72416, at * 19 (M.D. Pa. June 16, 2011; Cosmas v. Am. Express Centurion Bank, 2010 U.S. Dist. LEXIS 58780, at * 22-23 (D.N.J. June 11, 2010). The furnisher's duty to investigate is not triggered until it receives notice from the credit reporting agency of the consumer's dispute. Id. at * 9; see also Bartley, 2010 U.S. Dist. LEXIS 64037, at * 8; Dimedio v. HSBC Bank, 2009 U.S. Dist. LEXIS 52238, at * 7 (D.N.J. June 22, 2009)(citing Young v. Equifax Credit Servs., Inc., 294 F.3d 631, 639 (5th Cir. 2002)).

Plaintiff fails to articulate any facts showing that Defendant breached the requirements of the FCRA with respect to a duty to investigate a dispute since Plaintiff does not allege that she sent notice of disputed information to a consumer reporting agency so as to trigger said agency's notification of Defendant and Defendant's duty to investigate and modify the inaccurate information. Rather, Plaintiff only states that Defendant falsely reported misinformation to various credit reporting agencies and that "Plaintiff disputed the debt with Defendant but Defendant failed to remove or investigate the matter." (Compl., ¶¶ 32, 34)(emphasis added). Accordingly, Plaintiff fails to state and FCRA claim pursuant to 15 U.S.C. § 1681s-2(b), and that claim is thus dismissed.

9

C. Plaintiff's NJCFA Claim

Plaintiff alleges that she "was induced to take out the subject mortgage without being told that an escrow account would be imposed upon her," and that "Defendant misrepresented the terms of the loan" to her. (Compl., ¶¶ 39-40). Defendant claims that Plaintiff's NJCFA claim should be dismissed for failing to meet the heightened pleading standards of Fed. R. Civ. P. 9(a) since the allegations are "devoid of any factual content." (Def. Br., at 1, 9). Specifically, Defendant contends that Plaintiff's general allegation that Defendant induced her to take out a mortgage without telling her about the escrow account fails to state a claim because said allegation gives no indication of the terms of the mortgage, the manner in which and the point of time at which said misrepresentations were made, or any resultant damages from said misrepresentations. (Id. at 2-3, 9-10). Further, Plaintiff does not allege that Defendant was her lender, so the allegation concerning Defendant's inducement of Plaintiff to sign the mortgage cannot be credited as an allegation supporting any wrongful conduct by Defendant. (Id. at 3, 9).

The elements of a cause of action under the NJCFA are: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the loss." Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding, Inc., 245 Fed. Appx. 161, 165 (3d Cir. 2007)(citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994))(other citations omitted). The NJCFA defines an "unlawful practice" broadly as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

10

N.J.S.A. § 56:8-2. "Courts have emphasized that like most remedial legislation, the [NJCFA] should be construed liberally in favor of consumers." Cox, 138 N.J. at 15. "Proof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act." Id., at 19.

As cited infra, Fed. R. Civ. P. 9(b) requires that a plaintiff, in alleging fraud, "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico, 507 F.3d at 200. This includes allegations regarding "who made the purported misrepresentations and what specific misrepresentations were made." Id. The heightened standard was "designed to place defendants on notice of the precise misconduct that is alleged and to protect the reputation of defendants by safeguarding them against spurious allegations of immoral and fraudulent conduct." Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 491 (D.N.J. 1998).

Plaintiff's Complaint fails to state with specificity any facts regarding Defendant's unlawful conduct, ascertainable loss suffered by the Plaintiff, or a causal relationship between said unlawful conduct and Plaintiff's loss. First, since Defendant is the servicer of Plaintiff's mortgage rather than the lender, facts alleged pertaining specifically to inducing Plaintiff to sign the mortgage cannot, without more, be deemed unlawful conduct by Defendant as servicer.[1] Second, Plaintiff states no specific facts pertaining to "an ascertainable loss of moneys or

---

[1] Defendant also notes that Plaintiff's mortgage expressly provides that it would have an escrow account, including provisions that Plaintiff was required to pay her lender funds to cover taxes, assessments and required insurance. (Def. Br., at 9 n. 5).

11

property, real or personal" as a result of the allegedly unlawful conduct. N.J.S.A. § 56:8-19. An "ascertainable loss" is "a loss that is 'quantifiable or measurable'; it is not 'hypothetical or illusory.'" Lee v. Carter-Reed Co. LLC, 203 N.J. 496, 522 (2010)(quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005); see also, Reddick v. Allstate N.J. Ins. Co., 2011 U.S. Dist. LEXIS 145595 (D.N.J. Dec. 16, 2011). Examples of an ascertainable loss include an out-of-pocket loss. Id. Plaintiff's Complaint fails to state a quantifiable or measurable loss regarding her NJCFA claim. Even if the Court were to construe the damages alleged resulting from any purported denial of credit, such allegations based on the limited facts alleged are hypothetical and are preempted pursuant to 15 U.S.C. § 1681t(b)(1)(F) of the FCRA. See, generally, Cosmas v. Am. Express Centurion Bank, 757 F. Supp. 2d 489 (D.N.J. 2010). Since Plaintiff fails to state with specificity any unlawful conduct by Defendant or any ascertainable loss resulting from such conduct, it need not consider whether Plaintiff sufficiently states a causal relationship between the two, and dismisses Plaintiff's NJCFA claim as insufficiently pled.[2]

D. Plaintiff's Negligence and Breach of Duty of Good Faith Claims

Plaintiff alleges that "Defendant owed a duty to [her] to not unlawfully impose additional terms of the loan upon her and to not unlawfully damage Plaintiff's credit rating." (Compl., ¶ 43). Plaintiff further alleges that "Defendant breached its duty by imposing additional terms and

---

[2]Section 1681t(b)(1)(F) likewise preempts Plaintiff's state law claims pertaining to negligence and breach of the duty of good faith as they relate to credit reporting. See 15 U.S.C. § 1681t(b)(1)(F). See Cosmas, 757 F. Supp. 2d at 501 (holding that plaintiff's negligence claim was barred since Congressional intent as to how the FCRA should affect furnishers and consumers supported the encompassing of both statutory and common law claims within the § 1681t(b)(1)(F) preemption of state law claims).

damaging Plaintiff's credit rating," and that "Plaintiff has suffered and continues to suffer actual damages as a result of the foregoing acts and practices, including damages associated with, amongst other things, humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment caused by Defendants." (Id. at ¶¶ 44-45). Defendant argues that Plaintiff's negligence and breach of the duty of good faith claim fails because Plaintiff alleges no facts showing that Defendant owed Plaintiff any non-contractual duty or that, if there were such a duty, the overly general statements that Defendant imposed additional loan terms and damaged her credit rating would be sufficient to state a breach of said duty. (Defs. Br., at 1, 3, 10-11). Finally, Defendant states that, to the extent that Plaintiff's claim is predicated upon credit reporting, it is preempted by the FCRA. (Id. at 10-12).

1. Plaintiff's Negligence Claim

As stated infra, Plaintiff's common law claims pertaining to Defendant's credit reporting are preempted pursuant to 15 U.S.C. § 1681t(b)(1)(F). Accordingly, the Court will only consider Plaintiff's claims regarding Defendant's purported unlawful imposition of additional terms to the terms of Plaintiff's loan. To state a claim for negligence, a plaintiff must state facts "showing a duty of care on the part of the defendant, a breach of that duty, proximate cause and actual damages." Polzo v. County of Essex, 196 N.J. 569, 584 (2008). "There can be no actionable negligence if defendant or the act violated no duty to the injured plaintiff. The question of the existence of duty is one of law and not one of fact." Ryans v. Lowell, 197 N.J. Super. 266, 274 (App. Div. 1984). New Jersey law does not impose an affirmative duty on a bank to disclose information that they may have concerning the financial viability of the transactions the borrowers are about to enter. United Jersey Bank v. Kensey, 306 N.J. Super. 540, 553-557 (App.

Div. 1997); see also, Chrysler Credit Corp. v. First Nat'l Bank & Trust Co. of Washington, 746 F.2d 200, 207 (3d Cir. 1984). The relationship between Plaintiff and Defendant was one between a debtor and a creditor, dealing with one another at arms' length, and New Jersey courts have denied negligence claims in such contexts, holding that "it would be anomalous to require a [bank] to act as a fiduciary for interests on the opposite side of the negotiating table because their respective positions are essentially adversarial." Kensey, 306 N.J. Super. at 553. Further, "imposing a duty on a bank that would obligated it to be responsible for its depositor's financial affairs would be impractical as a matter of public policy." Globe Motor Car v. First Fidelity, 273 N.J. Super. 388, 394 (Law Div. 1993); see also Donleavy v. Casey, 2006 N.J. Super. Unpub. LEXIS 1397, at * 5-7 (App. Div. Dec. 26, 2006).

In the alternative, Plaintiff's negligence claim against Defendant servicer is also barred under the economic loss doctrine since, "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent legal duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). Accordingly, "the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort." Park v. M&T Bank Corp., 2010 U.S. Dist. LEXIS 24905, at * 19 (D.N.J. Mar. 16, 2010)(quoting Shinn v. Champion Mortg. Co., 2010 U.S. Dist. LEXIS 9944, at * 12 (D.N.J. Feb. 5, 2010). Since the Complaint states no facts under which Defendant owes Plaintiff a legal duty beyond its obligations to Plaintiff under the parties' contract, namely, the Note and the Mortgage, Plaintiff's negligence claim is barred by the economic loss doctrine

### 2. Plaintiff's Breach of the Duty of Good Faith and Fair Dealing Claim

Every contract contains an implied covenant of good faith and fair dealing. Sons of

14

<u>Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 420 (1997); Restatement (Second) of Contracts, § 205. This implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Sons of Thunder</u>, 148 N.J. at 420 (citations omitted). Plaintiff's Complaint fails to state facts supporting a denial of the fruits of her contract with Defendant. The facts stated regarding the terms of the contract in no way indicate that the escrow requirements were not a part of said terms; rather, Plaintiff only states facts alleging that Defendant did not inform her of the terms of the contract prior to inducing her to take out the subject mortgage. Again, since Defendant is not the lender but is rather the servicer of the loan, such facts are insufficient to support a claim for a breach of the duty of good faith and fair dealing since it was the lender rather than the servicer of the mortgage that induced Plaintiff to take out the mortgage. Further, since Plaintiff fails to state facts concerning any loss resulting from the purported breach, she also fails to state a claim on that ground. Accordingly, Plaintiff's breach of the duty of good faith is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted, and Plaintiff's Complaint is dismissed. An appropriate Order accompanies this Opinion.

DATED: May 31, 2012

José L. Linares  
United States District Judge

15